UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

RUSSELL A. FARRAR                                    CIVIL ACTION NO.  13-cv-930

VERSUS                                                       JUDGE ROBERT G. JAMES

STATE OF LOUISIANA, OFFICE OF           MAG. JUDGE KAREN L. HAYES
STATE PARKS, ET AL.

## RULING

Pending before the Court is the Defendants' Motion for Summary Judgment [Doc. No. 14].

This is a race discrimination and retaliation lawsuit brought by Plaintiff Russell A. Farrar ("Farrar")

against the State of Louisiana, through the Office of State Parks ("Office of State Parks"); Stewart

Johnson ("Johnson") in his official capacity as Secretary of the Office of State Parks; and Tim

Washam ("Washam"), Farrar's former supervisor, under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1983.  Farrar has filed an opposition

memorandum [Doc. No. 21], and the Defendants have filed a reply. [Doc. No. 22].

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED, and

Farrar's Title VII claims are DISMISSED WITH PREJUDICE.  The Court further gives notice of

its intent to dismiss Farrar's § 1983 claim unless an opposition memorandum is filed within 14 days

of this Ruling.

## I.    FACTS AND PROCEDURAL HISTORY

From 2002 until July of 2012, Farrar, a Caucasian, was employed as an equipment operator

and maintenance repairman with the Office of State Parks in Union Parish.  On June 23, 2012, Farrar

informed Jan Jenkins ("Jenkins"), a co-worker, "that she had some pretty legs and a cute derriere." [Doc. No. 21, Exh. 1, p. 21].   Jenkins reported the comments, and Rikki David ('David'), a human resources official with the Office of State Parks, and Mark Falcon ("Falcon"), the legal counsel for the Office of State Parks, investigated the claim.  Charles Davis, Deputy Secretary of the Department of Culture, Recreation, and Tourism ("DCRT"), which controls the Office of State Parks, instructed David to initiate termination proceedings if the allegations proved to be valid. [Doc. No. 14, Exh. D, p. 2].

The inquiry revealed that Farrar had made "strikingly similar" inappropriate remarks to another female co-employee.  [Doc. No. 14, Exh. E, p. 3].  When confronted by David and Falcon on July 6, 2012, Farrar admitted making the comments to Jenkins.  Consequently, Falcon, citing the Office of State Parks' "zero-tolerance" sexual harassment policy, allegedly informed Farrar that he could either resign or be fired on the spot.  [Doc. No. 21, Exh. 1, p. 24].  Farrar elected resignation. After Farrar resigned, his wife called several state officials, and she contends that Stewart Johnson told her that Farrar had options other than resignation. [Doc. No. 21, Exh. 2, p. 11].  Mrs. Farrar, however, admits that Rikki David told her that her husband's case was handled per the terms of the DCRT's written sexual harassment policy. *Id.*

Farrar's wife thereafter told him of an incident at Lake Claiborne State Park involving Michael Turner ("Turner"), an African-American employee.  In the Spring of 2010,  a female co-worker complained that Turner told her to "put her breasts in his mouth." [Doc. No. 21, Exh. 3, pp. 8-9].  After Turner's supervisors investigated the incident, Turner was suspended from work without pay for one week, but was not terminated.   No other employee had made complaints against Turner, and he denied making the inappropriate statement.

2

Based on his forced resignation and the Turner incident, Farrar filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that Turner was a similarly situated employee who had been treated more favorably because of his race.

On February 7, 2013, the EEOC issued a notice of right to sue letter.  On May 6, 2013, Farrar timely filed suit against the Office of State Parks, Johnson, and Washam under Title VII and §1983. In addition to his race discrimination claims, Farrar alleges that his forced resignation constituted retaliation under Title VII for his previous complaint about Washam.  In 2007, Farrar reported to the Office of State Parks' Baton Rouge headquarters that Washam, his supervisor, engaged in inappropriate sexual behavior with two female employees. [Doc. No. 21, Exh. 1, pp. 33-35].  Farrar claims that Washam treated the two more favorably than Farrar and other Office of State Parks' employees.

## II.   LAW AND ANALYSIS

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

### B.  Title VII Claims

#### 1.   *Farrar Has not Met his Burden of Proof for Title VII Race Discrimination.*

Farrar asserts disparate treatment, alleging that a similarly situated African-American employee received more favorable treatment because of his race.  Title VII prohibits an employer from discriminating against any person in the terms and conditions of employment because of his race.  *See* 42 U.S.C. § 2000e-2.

Because Farrar offers no direct evidence of racial discrimination, the Court analyzes his claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).  Under this framework, the plaintiff must present a *prima facie* case of discrimination by establishing that: (1) he is a member of a protected group or class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) he was

4

treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  The fulfillment of the *prima facie* case "raises an inference of discrimination"  because the Court can presume these acts, if otherwise unexplained, are "more likely than not" based on the consideration of an impermissible consideration of race.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Once the plaintiff establishes his *prima facie* case, "the employer must respond with a legitimate, nondiscriminatory reason for its decision.  This burden on the employer is only one of production, not persuasion, involving no credibility assessments."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219*,* 222 (5th Cir. 2000).

When the employer satisfies this requirement, the burden of proof then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed motive alternative.").  *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004)(internal citations omitted).

Although Farrar has established the first three prongs of his *prima facie* case, he cannot establish the fourth and final prong: that he and Turner were similarly situated employees.  "Employees with different supervisors who work in different divisions . . . generally will not be deemed similarly situated." *Lee,* 574 F.3d at 259.  The employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken "under nearly identical circumstances."  *Turner v. Kansas City S. Ry. Co.,* 675 F.3d 887, 893 (5th Cir.

2012)(citations omitted).  If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221-22 (5th Cir. 2001)(emphasis added).

The investigation and subsequent discipline of Turner occurred under the watch of a different manager in a different parish two years earlier, and took place in 2010—under the supervision of a different Lieutenant Governor than Farrar's incident.  Charles Davis, the DCRT's Deputy Secretary, was appointed by Lieutenant Governor Jay Dardenne on November 23, 2010, after the Turner incident.  Following Davis' appointment, the DCRT updated its sexual harassment policy, and Davis mandated that all DCRT employees attend training emphasizing the DCRT's zero-tolerance stance on sexual harassment.  Farrar himself attended one of these training sessions on September 28, 2011. When Davis was informed of the allegations against Farrar, he instructed Rikki David to commence termination proceedings if the allegations proved to be true.  Davis avers that he was completely unaware of Farrar's race at that time.

Moreover, the facts in Farrar's situation differ markedly from the Turner matter, further confirming that Farrar and Turner are not similarly situated. The investigation of Farrar's case conclusively established sexually inappropriate conduct while the investigation of the Turner matter did not.  Turner denied making sexually explicit comments, and his case evolved into a "he said/she said" scenario.  Farrar, on the other hand, unequivocally admitted to making sexually inappropriate comments to Jones.  Further, two female co-workers reported Farrar's sexually inappropriate behavior while only one co-worker made allegations against Turner.  Considering the undisputed facts, the Court finds that Farrar has not raised a genuine issue of material fact for trial whether he

and Turner are similarly situated.  Farrar, therefore, cannot establish a *prima facie* case of racial discrimination.

Even if Farrar could establish his *prima facie* case, he has failed to show that the Office of State Parks' legitimate and nondiscriminatory reasons for his forced resignation are pretext for racial discrimination.[1]  Farrar first asserts a "cat's paw" theory, alleging Falcon, rather than Davis, was the ultimate decision maker in both his and Turner's cases.  To prevail on a cat's paw theory, Farrar must demonstrate (1) that Falcon acted with discriminatory animus, and (2) that he had "influence or leverage over [Davis]" to such a degree that "it is proper to impute [Falcon's]  discriminatory attitudes to [Davis]." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 477 (5th Cir. 2005)(internal citations omitted).  Essentially, if Davis acted as the conduit of Falcon's prejudice—his cat's paw—Davis' innocence would not spare DRCT of liability.

However, there is no evidence that Falcon, as legal counsel, had leverage over Davis or that Falcon acted with discriminatory animus.  The mere fact that Falcon was involved in both employment investigations does not establish that he was racially motivated.  Likewise, there is no evidence that Falcon was the ultimate decisionmaker, or that Davis simply rubber stamped his decision.  To the contrary, the uncontroverted evidence shows that Davis' administration pursued an aggressive zero-tolerance sexual harassment policy, that Davis directed Rikki David to terminate Farrar if the claims against him were substantiated, and that his directive was carried out after Farrar's confession.

Farrar also argues that he can establish pretext because the Office of State Parks failed to follow their alleged remediation before termination policy.  An employer's failure to follow its own

---

[1] Farrar does not make a mixed-motive argument.

employment policies can be evidence of pretext. *See Machinchick v. PB Power, Inc.,* 398 F.3d 345, 354 (5th Cir. 2005)(finding that an employer's failure to follow its *written* policy of giving employees a written and verbal warning before firing them, *inter alia,* constituted evidence of pretext).   However, the only indication of such a policy is based on Farrar's wife's testimony that Stewart Johnson told her that her husband "had more choices" other than forced resignation. [Doc. No. 21, Exh. 2, p. 11].  She admits, however, that Rikki David told her that her husband's case was handled per the terms of the DCRT's written sexual harassment policy and that Davis took her call after Farrar's termination, but did not take any further action. *Id.*

Defendants have produced undisputed evidence that the DCRT does not have a written policy of remediation before termination.  In fact, DCRT's sexual harassment policy states that employees found to have "engaged in [sexually] inappropriate behavior . . . will be appropriately disciplined . . . [which] may include counseling, reprimand, suspension, demotion, reassignment, or **termination**." [Doc. No. 21, Exh. 5, p. 4](emphasis added).  The policy states further that the "totality of the circumstances will be considered, including the pervasiveness, offensiveness, and unwelcome nature of the conduct." *Id.* at 2.  At best, Farrar's evidence is consistent with the written policy—there were options other than termination, but Davis and those investigating the claim determined that termination was the appropriate avenue in his case.

The failure to remediate in this case is not sufficient evidence of pretext. The Court, therefore, GRANTS the Defendants' Motion for Summary Judgment on Farrar's Title VII race discrimination claim.

      **2.**      ***Farrar Has not Met his Burden of Proof for Title VII Retaliatory Discharge.***

Farrar argues that his 2012 forced resignation constitutes Title VII retaliation for a complaint he lodged about Washam in 2007.  Title VII prohibits an employer from discriminating against an employee because he has opposed an employment practice that is unlawful under Title VII.  *See* 42 U.S.C. § 2000e-3(a).

Retaliation claims are analyzed under a modified *McDonnell Douglas* burden-shifting framework.  To establish a *prima facie* case of unlawful retaliation, the plaintiff must show: (1) that he engaged in protected activity; (2) that he was subjected to a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the materially adverse employment action.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

If the plaintiff demonstrates a *prima facie* case, the burden shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action. *Gorman v. Verizon Wireless Texas, L.L.C.,* 753 F.3d 165, 171 (5th Cir. 2014)*.*  The employer's burden at this stage is "one of production, not persuasion, and involves no credibility assessment."  *McCoy,* 492 F.3d at 557.  If "that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Gorman,* 753 F.3d at 171.

Assuming, *arguendo*, that Farrar's 2007 complaint against his supervisor, Washam, was a protected activity under Title VII, Farrar still cannot establish his *prima facie* case because the causal link between his 2007 complaint and 2012 forced resignation is simply too attenuated.  Temporal proximity may be sufficient to prove the plaintiff's *prima facie* case if the protected act and the materially adverse employment action are "very close" in time.  *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007).  Generally, a time lapse of less than four months has been sufficient to satisfy the causal connection for summary judgment purposes.  *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001).  A five-month lapse, on the other hand, does not support an inference of a causal

link if it is otherwise unsupported.  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002); *see also Ajao v. Bed Bath and Beyond, Inc.*, 265 Fed. App'x 258, 265 (5th Cir. 2008) (where plaintiff relied "solely" on the fact that the adverse action took place four months after he filed an EEOC charge, the "temporal proximity . . . [was] not close enough, without additional supporting summary-judgment evidence, to establish a causal connection.").

Farrar asks the Court to conjure a causal link from the *five-year* gap between his complaint against Washam and his resignation, but cites no authority to support such a proposition.  Washam, who Farrar alleges instigated the retaliatory discharge, was not Farrar's supervisor in 2012 and had no knowledge of the present action until after Farrar resigned.  Further, the only additional evidence Farrar offers to support this claim is a November 13, 2012 e-mail between a DCRT human resources official and Washam.  That e-mail, however, was sent three months *after* Farrar resigned and one month after he filed an EEOC complaint naming Washam. Such effect and cause logic is unpersuasive.

Even if Farrar could establish a sufficient causal link and, therefore, a *prima facie* case, he has presented insufficient evidence of pretext to overcome Defendants' already established legitimate and non-retaliatory reasons for Farrar's forced resignation.  Accordingly, the Defendants' Motion for Summary Judgment on Farrar's Title VII retaliation claim is GRANTED.

### C.      § 1983 Claim

Farrar generally asserts a claim under § 1983 in his Complaint, but fails to specify on what grounds he is entitled to relief.      Although  the Defendants purportedly move for summary judgment on this claim, they made no supporting arguments in their memoranda.  Nevertheless, given the facts before the Court, it does not appear that Farrar can raise a genuine issue of material

fact for trial on his § 1983 claim either.  Therefore,  it is the intent of the Court to dismiss this claim

as well unless Farrar files a memorandum in opposition within 14 days of this Ruling.

**III.**   **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. No. 14]

is GRANTED, and Farrar's Title VII claims are DISMISSED WITH PREJUDICE.  The Court has

given notice of its intent to dismiss Farrar's § 1983 claim unless he files an opposition memorandum

within 14 days of this Ruling.

MONROE, LOUISIANA, this 6th day of October, 2014.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**